2017 PA Super 179

| | |
|---|---|
| JON C. HILDEBRAND AND ELLEN L. HILDEBRAND, HIS WIFE<br><br>              Appellants<br><br>            v.<br><br>EQT PRODUCTION COMPANY; EQUITRANS, L.P., BRYAN A. LONG AND COURTNEY R. LONG, HIS WIFE, AND MAX W. SCHINKOVEC<br><br>              Appellees | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 1046 WDA 2016 |

Appeal from the Order entered June 24, 2016
In the Court of Common Pleas of Greene County
Civil Division at No: 922 AD 2012

BEFORE:  OLSON, STABILE, and STRASSBURGER, JJ.[*]

OPINION BY STABILE, J.:                    **FILED JUNE 8, 2017**

Appellants, Jon C. Hildebrand and Ellen L. Hildebrand (together "Hildebrand" or "Appellants"), appeal from the order entered on June 24, 2016 in the Court of Common Pleas of Greene County, granting summary judgment in favor of Max Schinkovec ("Schinkovec") and EQT Production Company and Equitrans, L.P. (together "EQT") in this declaratory judgment action involving oil and gas leases.  The trial court's June 24, 2016 order was based in significant part on two prior orders and opinions from the same

---

[*] Retired Senior Judge assigned to the Superior Court.

court dated May 20, 2014 (denying Appellants' motion for summary judgment) and January 29, 2015 (granting summary judgment in favor of Schinkovec and EQT and dismissing Counts I and II of Appellants' three-count complaint).[1]  The claims against Appellees, Bryan A. Long and Courtney R. Long (together "Long"), were also dismissed by virtue of the trial court's orders.  Following considered review, we reverse and remand.

In this appeal from the grant of summary judgment, Appellants present five issues for our consideration:

1. Did the Honorable Trial Judges err as a matter of law or abuse their discretion in concluding that the Lease Modifications amended and nullified the Non-Apportionment Language contained in the Hupp Lease, thereby essentially converting it into an "apportionment lease," by in particular, failing to interpret Paragraph 5 of the Hildebrand Modification as a "lesser interest clause" and instead requiring that production royalties generated from the Hupp lease be paid to all owners of the oil and gas interests encumbered by the Hupp Lease in proportion of their interests?

---

[1] Each of the three orders and opinions was authored by a different trial judge.  The 2014 order and opinion was authored by the Honorable William R. Nalitz.  The Honorable Farley Toothman relied on the 2014 ruling in his 2015 opinion.  Judge Toothman did not issue a separate order but his opinion indicated that the summary judgment motion was granted.  The Honorable Gerald R. Solomon adopted the earlier rulings in his June 24, 2016 order from which this appeal is taken.  In his 2016 order, Judge Solomon determined that Schinkovec was entitled to 1.34% of the net revenue interest in Hildebrand Unit #1, which will be discussed herein.  Appellants filed this appeal from the June 24, 2016 order and complied with the trial court's directive to file a Rule 1925(b) statement.  Judge Solomon subsequently issued a statement in lieu of a Rule 1925(a) opinion, relying upon the opinions and orders of Judges Nalitz and Toothman.  Statement in Lieu of Opinion, 9/19/16.

2. Did the Honorable Trial Judges err as a matter of law or abuse their discretion by holding that the Lease Modifications nullified/amended the Non-Apportionment Language contained in the Hupp lease given that the Long and Schinkovec Modifications did not contain language similar to Paragraph 5 of the Hildebrand Modification?

3. Did the Honorable Trial Judges, particularly Judge Nalitz pursuant to his misunderstanding of the makeup of the Unit and the nature of the Hildebrands' claims, err as a matter of law or abuse their discretion in concluding that the Lease Modifications amended the Non-Apportionment Language contained in the Hupp Lease and required a share of the production royalties to be apportioned to Schinkovec, given that the Schinkovec oil and gas tract was not, and has not ever been "pooled" in the Unit?

4. Did the Honorable Trial Judges err as a matter of law or abuse their discretion in granting EQT and Schinkovec's Motions for Partial Summary Judgment on the basis of the law of the case doctrine and Judge Nalitz's flawed Opinion and Order of May 24, 2010?

5. Upon ruling that the Lease Modifications amended and nullified the Non-Apportionment Language contained in the Hupp Lease, did the Honorable Trial Judges err as a matter of law or abuse their discretion by applying Pennsylvania's "apportionment rule," as stated in **Wettengel v. Gormley**, 28 A. 934 (Pa. 1894), to the subject horizontal wells drilled by EQT?

Appellants' Brief at 8-10. Because Appellants' issues are interrelated, we shall consider them together.

As this Court has recognized:

When reviewing a trial court's grant of summary judgment, our standard and scope of review are as follows:

Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the

- 3 -

> entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is de novo.
>
> *Reinoso v. Heritage Warminster SPE, LLC*, 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*) (additional citations omitted). With respect to the denial of summary judgment, "[w]e review the trial court's denial of summary judgment for an abuse of discretion or error of law." *Ramsay v. Pierre*, 822 A.2d 85, 90 (Pa. Super. 2003).

*Birdie Associates, L.P. v. CNX Gas Company, LLC*, 149 A.3d 367, 371 (Pa. Super. 2016) (quoting *Bezjak v. Diamond*, 135 A.2d 623, 627 (Pa. 2016)).

The parties do not suggest that there are issues of material fact in dispute here. Rather, Appellants challenge the trial court's interpretation of various leases and lease modifications entered into between lessee EQT (and its predecessor[2]) and lessors Hildebrand, Schinkovec and Long. The three lessors own neighboring properties that were once owned by A.H. Hupp and Emma M. Hupp and were leased to EQT in 1928 ("Hupp Lease"). Ultimately, Hildebrand filed a declaratory judgment action asking the trial court to declare that EQT had wrongly paid royalties to Schinkovec. Hildebrand also

---

[2] For ease of discussion, we shall refer to EQT and its predecessor, The Peoples Natural Gas Company, simply as EQT throughout this Opinion.

requested an accounting to determine the sums improperly paid or placed in a suspense account pending resolution of the dispute. The trial court determined that Schinkovec was entitled to the sums received and paid into the suspense account and held that Hildebrand was not entitled to an accounting.

The relevant lease provisions, presented in chronological order, are as follows:

The Hupp Lease provides, in pertinent part:

In case of a conveyance of all or a part of the premises leased, Lessee may continue to pay delay rentals to Lessor until furnished with a certified or sworn copy of any such deed of conveyance and other documents or proof to enable Lessee to identify land conveyed as being all or part of leaseland, or on written note of any such conveyance, may hold all installments of delay rental and other payments until furnished with such copy and other documents and proof, and shall apportion the delay rental, in case of any decision, according to acreage, and **shall deliver all royalty oil and gas well rental to the owner or owners of the particular tract of land upon which the well is located.**

Hupp Lease at 3 (emphasis added). The Hupp lease covered 96 acres and provided for an initial term of five years and a secondary term for as long as the land was operated by the lessee in search of, or in the production of, oil and gas. *Id.* The lease was modified in 1951 to permit gas storage. The parties agree that the 1951 amendment has no bearing on the apportionment of royalties at issue in this case. *See* Trial Court Opinion ("T.C.O."), 5/20/14, at 2.

- 5 -

In 2009, the Hupp Lease was again modified with four separate lease modifications between EQT and the current owners of the Hupp tract, Hildebrand, who owns 88.897 acres of oil and gas and 75.897 acres of surface; George and Rebecca Schmidt (together "Schmidt"), who own 13 surface acres but no oil and gas interests below their property; Long, who owns one acre of oil and gas as well as surface; and Schinkovec, who owns 5.853 acres of oil and gas as well as surface. The Hildebrand Modification, which was prepared by EQT, erroneously indicated that the acreage subject to the Hupp Lease was 75.66 acres based on the surface acreage controlled by Hildebrand[3] while the remaining three modifications correctly recognized the full 96 acres subject to the Hupp Lease.

All four of the 2009 lease modifications include a provision entitled, "Pooling and Unitization," which permitted EQT at any time "to pool or unitize all or any part of parts of the leased premises or rights therein with any other land in the vicinity thereof . . . to create units of such size and surface as Lessee may desire, but containing not more than 640 acres[.]"

_____

[3] *See* EQT's Answer to Interrogatories, 6/28/13, at 10-17. By letter dated August 24, 2010, EQT acknowledged that the reference to 75.66 acres was a typographical error and should have been 88.897 acres based on Appellants' oil and gas ownership. EQT requested that Appellants execute a corrective modification indicating that "the acreage contained within the Leased Premises, and therefore covered by the Lease, as amended by the Original Modification, is 88.897 acres, more or less." Corrective Modification at ¶ 2.

Hildebrand Lease Modification at ¶ 2; Schmidt, Long and Schinkovec Lease Modifications at ¶ 2 b.  Paragraphs 2 and 2 b also provided:

> There shall be allocated to the portion of the leased premises included in any pooling such proportion of the actual production from all lands so pooled as to such portion of the leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled.  The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production from the portion of the leased premises included in such pooling in the same manner as though produced from such portion under the terms of this lease.

*Id.*[4]

The following provision appears in the Hildebrand Lease Modification only:

> In the event the lessor herein should own less than the entire undivided fee simple in the property subject to the original oil and gas lease, then any royalties or rentals accruing under this lease, if any, shall be reduced proportionally; and if the production from the lands embraced in this lease, or any part thereof, is subject to any royalty or interest in production other than the royalty provided herein, then such interest in production shall be deducted from the Lessor's royalty or other share of production herein specified.

Hildebrand Modification at ¶ 5.

EQT issued a Notice of Unitization of "Hildebrand #1 Unit" on January 19, 2011, comprised of 346.71 acres of land, including 76.15 acres of lands

---

[4] The only difference between the quoted language and the corresponding provisions of the Schmidt, Long and Schinkovec Modifications is in the final word, "lease."  The word "Agreement" appears in place of "lease" in those modifications.  *See* Schmidt, Long and Schinkovec Modifications at ¶ 2 b.

subject to the Huff Lease. EQT acknowledged that the 76.15 acres of Huff Lease lands pooled into Hildebrand #1 Unit included 75.15 acres owned by Hildebrand and the single acre owned by Long. No Schinkovec property was included in the unit. EQT's Answers to Interrogatories, 6/28/13, at 5. Even though no Schinkovec lands were pooled, EQT assigned Schinkovec 1.34% of the net revenue in Hildebrand #1 Unit based on Schinkovec's ownership of 6.1% of the Hupp Lease lands, which comprised 21.96% of the total acreage included in the Hildebrand #1 Unit. **Id.** at 6. EQT also explained that it executed the Hildebrand Modification for 75.66 acres, the surface acreage controlled by Hildebrand, rather than the amount of oil and gas rights, totaling 88.897 acres, held by Hildebrand. **Id.** at 15 and 16.

In its May 20, 2014 opinion, the trial court stated:

The gist of [Appellants'] Complaint is that the Hupp [L]ease provides that in the event of a subdivision of the Hupp tract, all the royalties go to the owner of the surface where the well or wells are located. This provision of the lease is not typical of oil and gas leases because Pennsylvania law generally follows the apportionment rule, announced in **Wettengel v. Gormley**, 39 A. 57 (Pa. 1898).[5] Upon subdivision, "each should receive such share of the royalty as his or her share of the land bears to the whole tract covered by the lease. It does not matter on what acre or hundred acres the wells may be situated[." **Id.** at 58.]

Here, however, the [Hupp L]ease is very specific that royalties are to be paid to [Appellants], unless that provision was modified by later amendment. [Appellants] in their Motion for Summary

_____

[5] In **Wettengel v. Gormley**, 39 A. 57 (Pa. 1898), our Supreme Court revisited its ruling in **Wettengel v. Gormley**, 28 A. 934 (Pa. 1894), and reaffirmed that Pennsylvania law generally follows the apportionment rule.

Judgment and their Brief in Support Thereof quote at length the portion of the 2009 modification captioned "POOLING AND UNITIZATION" . . . . The Motion also contains in Paragraph 16 the bald assertion that: "None of the amendments to the Lease contained in the Hildebrand Modification altered the provision in the [Hupp] Lease that stated that production royalty payments would only be directed to those tracts where a well was situated[."] With this claim we cannot agree.

T.C.O., 5/20/14, at 4. The basis for the trial court's rejection of Appellants' argument was language in Paragraph 5 of the Hildebrand Modification directing that royalties would be reduced proportionately in the event the Lessees "should own less than the entire undivided fee simple estate in the property subject to the oil and gas lease." *Id.* at 5 (quoting Hildebrand Modification at ¶ 5). The trial court reasoned that the Hupps owned 96 acres in 1928 but Appellants owned only 88.897 acres of oil and gas subject to the Hupp Lease. Therefore,

When [Appellants] agreed to the modification, they also agreed that "any royalties accruing under the lease . . . shall be reduced accordingly." To put it another way, before 2009, royalties produced from the Hupp [L]ease would be paid to whomever owned the land where the well was located. After 2009, royalties would be paid to all owners of the oil and gas interests encumbered by the 1928 Hupp lease in proportion of their interests (provided it was included in the unit).

*Id.* at 5-6. Appellants counter that the language of Paragraph 5 did not alter the non-apportionment language of the Hupp Lease but was included in the Hildebrand Modification to serve as a "lesser interest clause." As this Court explained in **Kepple v. Fairman Drilling Co.**, 551 A.2d 226 (Pa. Super. 1988),

> "The proportionate reduction clause or lesser interest clause is inserted in an oil and gas lease for the lessee's protection in case it is later found that the lease covers *a **smaller interest in the minerals*** than the lessee believed it was leasing." R. Hemmingway, *Law of Oil and Gas* § 7.8 (2d ed. 1983). The existence of such a clause permits the lessee to reduce the royalty and rental payments to correspond to the interest actually owned by the lessor. ***Id.***; 3A W. Sommers, *The Law of Oil and Gas* § 609.2 (Flittie Supp. 1987). Clearly, the presence of such a clause in a lease agreement implies that the title of the lessor is not inviolate.

***Id.*** at 231 (emphasis added). Appellants explain,

> Generally, a lesser interest clause (also known as a "proportionate reduction clause") provides that if the lessor owns less than a 100% undivided fee simple interest in the oil and gas underlying his/her *own tract*, *i.e.*, less [] than the full mineral estate, then any royalty payments are made based upon the actual percentage of ownership of each owner.

Appellants' Brief at 26 (citing ***Kepple***, 551 A.3d at 231) (emphasis in original).

Appellants note that the Hildebrand Modification contains the lesser interest clause whereas neither the Long nor Schinkovec Modification does, undermining the trial court's characterization of the 2009 modifications as "three separate but almost identical documents." T.C.O., 5/20/14, at 3. ***See also*** T.C.O., 1/29/15, at 2 (referring to the lease modifications as "three (3) separate but nearly identical documents."). As Appellants assert, the trial court's choice of language is "puzzling given the very language that was cited as the basis for their [o]pinions (Paragraph 5 of the Hildebrand Modification) fails to appear in either the Schinkovec or Long Modifications." Appellant's Brief at 32-33. Moreover, as EQT acknowledges, as of 2009,

EQT believed that Schmidt had an interest in oil and gas rights underlying 13 acres of land subject to the Huff Lease when, in fact, Appellants possessed those oil and gas rights. Schmidt owned only the surface estate. *See* EQT's Answers to Interrogatories, 6/28/13, at Nos. 10-17. Further highlighting the fallacy of the trial court's interpretation is the fact that the Hupp lands had been divided into multiple parcels prior to the 2009 modifications and, therefore, EQT was already aware that Appellants owned less than an "undivided fee simple to [the 96 acres] subject to the Hupp lease." Hildebrand Modification at ¶ 5.

We agree with Appellants' interpretation of the lesser interest provision included only in the Hildebrand Modification. EQT was not clear on the oil and gas rights owned by the Hildebrands at the time they entered into the Modification. However, there was no question as to the Long and Schinkovec ownership interests. In further support, Appellants note that the Pooling and Unitization provisions included in the 2009 modifications permitted EQT to pool or unitize any portion of the premises covered by the modifications and obligated EQT to pay royalties only on the portion of leased premises that were pooled. As the modification language reflects:

> Any well which is commenced, or is drilled or is producing on any part of any lands, theretofore or thereafter so pooled shall, except for the payment of royalties[,] be considered a well commenced, drilled and producing on the lands hereby leased. There shall be allocated to the portion of the leased premises included in any pooling such proportion of the actual production from all lands so pooled as to such portion of the leased premises, computed on an acreage basis, bears to the entire

acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production from the portion of the leased premises included in such pooling in the same manner as though produced from such portion under the terms of this lease.

Hildebrand Modification at ¶ 2; Long and Schinkovec Modifications at ¶ 2 b.[6]

As Appellants contend,

[G]iven the mechanism in which royalties from the Unit would be paid was clearly identified within the "Pooling and Unitization" paragraph *which was contained in each of the Lease Modifications*, there is no logical reason to support the notion that EQT would have then included a separate paragraph, *in the Hildebrand Modification only*, which entirely contradicted that method. In essence the [trial court's] interpretation of Paragraph 5 renders the "Pooling and unitization" clauses superfluous.

Appellant's Brief at 34-35 (emphasis in original).

We agree with Appellants that the non-apportionment language of the Hupp lease was not nullified by the lesser interest clause in the Hildebrand Modification or by any provisions of the Long or Schinkovec Modifications. In the wake of the oil and gas industry moving from vertical to horizontal drilling, EQT executed the modifications to pool leased lands and provide a mechanism for calculating and paying royalties based on pooled acreage. For Appellants, those royalties were to be based on their 75.15 acres

---

[6] *See* n. 4.

included in the pooled lands.[7]  For Long, royalties were to be based on the single acre included in the pooled lands.  For Schinkovec, there would be no royalties because none of the Schinkovec land was included in the pooled lands.  **See** EQT's Discovery Responses, 6/28/13, and in particular the Letter from EQT, 1/12/11, to various recipients included Appellants and Schinkovec (indicating that the Hupp Lease "contributes 76.15 acres to the Unit" but that "[t]he portion of the Leased Premises owned by the Schinkovec family is not within the Unit's boundaries.").[8]

We find that the trial court committed an error of law in denying Appellants' motion for summary judgment in 2014 based on its erroneous interpretation of the lesser interest clause included solely in the Hildebrand Modification.  That erroneous interpretation was the basis for the trial court's 2015 determination, based on the "law of the case" doctrine, not to reexamine the 2009 modifications.  **See** T.C.O.  1/28/15,  at  3-4

---

[7] We note in passing that there are three wells in Unit #1, all of which are located on Appellants' property.

[8] It appears the trial court did not recognize that the Schinkovec property was not included in the pooled property.  The trial court indicated that, "After 2009, royalties would be paid to all owners of the oil and gas interests encumbered by the 1928 Hupp [L]ease in proportion of their interests (provided it was included in the unit)."  T.C.O. 5/20/14, at 5-6.  The court continued, "This only makes good sense, because a horizontal well is likely to pool gas from within many tracts, and it would be only fair for all parties subject to the lease to receive their proportionate share."  **Id.**  However, the Schinkovec property was not pooled into the Unit and there is no language whatsoever in the Schinkovec Modification that entitles Schinkovec to receive any royalties from the Unit's production.

(unnumbered). That, in turn, led to the error in the trial court's 2016 ruling that Appellants had failed to state a claim for an equitable accounting and that EQT and Schinkovec were entitled to summary judgment. However, while the trial court believed it was compelled to follow the law of the case doctrine, this Court is not similarly bound. Clearly, there is no impediment to this Court correcting the trial court's initial erroneous ruling or its subsequent orders. Because we conclude the trial court committed error of law in its interpretation of Paragraph 5 of the Hildebrand Modification, we reverse the trial court's grant of summary judgment in favor of EQT and Schinkovec.

Order reversed. Case remanded for proceedings consistent with this Opinion, including grant of the relief requested in Counts I and II of Appellants' Declaratory Judgment Complaint. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2017