J-A09031-24

2024 PA Super 227

| | | |
|---|---|---|
| LOUISE KOWALL, DONNA KOPECEK AND EVELYN VEHOUC, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 844 WDA 2023 |
| UNITED STATES STEEL CORPORATION, INC, A DELAWARE CORPORATION DOING BUSINESS IN PENNSYLVANIA AND USX CORPORATION, A DELAWARE CORPORATION | : : : : : : : : : | |
| APPEAL OF: UNITED STATES STEEL CORPORATION, INC. AND USX CORPORATION | : : : | |

Appeal from the Order Entered December 13, 2022
In the Court of Common Pleas of Washington County Civil Division at
No(s):  C-63-CV-2017-3355

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

OPINION BY NICHOLS, J.:                    **FILED: October 1, 2024**

Appellants United States Steel Corporation, Inc. and USX Corporation appeal from the order denying their motions for summary judgment. Appellants contend that the trial court erred in its interpretation of Pennsylvania's Hazardous Sites Cleanup Act[1] (HSCA) and by recognizing a

---

[1] 35 P.S. §§ 6020.101-6020.1305.

cause of action for trespass based on the airborne intrusion of invisible particulates. We affirm.

We adopt the trial court's summary of the facts underlying this matter. *See* Trial Ct. Op. & Order, 12/16/21, at 1, 4-11. Briefly, Appellees[2] own properties located within five miles of the site of the former Donora Zinc Works. The Donora Zinc Works refined zinc ore into zinc using furnaces to heat the ore to an extremely high temperature. The refining process released, among others, lead, zinc, cadmium, and arsenic as by-products. The Donora Zinc Works released these by-products into the atmosphere through smokestacks. Appellants' predecessors in interest operated the Donora Zinc Works from 1915 to 1957. The trial court stated:

> [Appellants] admit[] that the Donora Zinc Works caused lead, zinc, cadmium[,] and arsenic to be released in[to] the air and to be deposited on land outside of the Zinc Works. [Appellants] further admit[] that it knew at the time that the operations caused those contaminations to be released. [Appellants] admit[] that those metals are considered to be hazardous substances under the HSCA.

*Id.* at 12.

Appellees filed a class action complaint against Appellants in 2017. Therein, Appellees raised four claims: violation of the HSCA, negligence, public and private nuisance, and trespass. Compl., 7/7/17, at 11-21; R.R. at 42a-

_____

[2] Appellees are Louise Kowall, Donna Kopecek, and Evelyn Vehouc, individually and on behalf of all other similarly situated.

52a.[3]  On December 16, 2021, the trial court entered an order granting Appellees' motion for class certification.  Trial Ct. Op. & Order, 12/16/21, at 20-21.

Appellants filed two motions for summary judgment on August 4, 2022. In their first motion, Appellants argued that Appellees cannot state a cause of action for trespass based on Appellants' alleged failure to remove invisible particulates on Appellees' properties.  R.R. at 183a-208a.  In their second motion, Appellants contended that Appellees failed to meet the statutory requirements to bring a private cause of action under the HSCA.  *Id.* at 219a-53a.  Appellees responded that Appellants' motion for summary judgment on trespass was premature because Appellees had not yet produced their expert reports in discovery.  *Id.* at 294a, 297a-99a, 306a-13a.  On December 13, 2022,[4] the trial court issued an order and opinion denying both of Appellants' motions for summary judgment.

On January 10, 2023, Appellants filed a motion requesting that the trial court amend its December 13, 2022 order to include language from 42 Pa.C.S. § 702(b).  *Id.* at 521a-32a.  The trial court granted Appellants' motion and amended its order denying summary judgment to include the requested

---

[3] We may cite to the parties' reproduced record for the parties' convenience.

[4] The trial court's opinion and order are both dated December 12, 2022, but the trial court notified the parties of the entry of its opinion and order on December 13, 2022.  *See* Pa.R.A.P. 108(b); Pa.R.C.P. 236(b).  We have amended the caption accordingly.

language on January 25, 2023.[5]  On February 17, 2023, Appellants filed a timely petition for permission to appeal with this Court pursuant to Pa.R.A.P. 1311.  This Court granted Appellants' petition for review on July 21, 2023. The trial court did not order Appellants to comply with Pa.R.A.P. 1925(b) and did not issue a separate Rule 1925(a) opinion.

Appellants raise the following issues on appeal:

1. Does a plaintiff's attorney's payment for environmental sampling of property—which the plaintiff has no obligation to reimburse—constitute the incurrence of "costs of response by any other person" as required to state a cause of action under [35 P.S. § 6020.702(a)(3)]?

2. Does [35 P.S. § 6020.1115]—which provides that courts "may grant any equitable relief" in actions "to prevent or abate" releases of hazardous substances—authorize an order requiring a defendant to pay for un-incurred future costs for property sampling and remediation in a private citizen suit?

3. Does Pennsylvania law recognize a cause of action for trespass based on airborne intrusions of invisible particulates and, if so, does it require proof of substantial harm to property from those intrusions?

Appellants' Brief at 5-6.

**Standard of Review**

The principles governing our review are well settled:

Our scope of review is plenary, and our standard of review is the same as that applied by the trial court.  Our Supreme Court has stated the applicable standard of review as follows: an appellate

---

[5] We note that although trial court's order was time-stamped and docketed on January 24, 2023, the trial court sent notice of entry of this order to the parties on January 25, 2023.  **See** Pa.R.A.P. 108(b); Pa.R.C.P. 236(b).

court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. [When] our inquiry involves solely questions of law, our [standard of] review is *de novo*.

With respect to the denial of summary judgment, we review the trial court's denial of summary judgment for an abuse of discretion or error of law.

**Hildebrand v. EQT Prod. Co.**, 165 A.3d 969, 971 (Pa. Super. 2017) (citations omitted and formatting altered).

Further, "[w]here the issue is the proper interpretation of a statute, it poses a question of law; thus, our standard of review is *de novo*, and the scope of our review is plenary." **Yocabet v. UPMC Presbyterian**, 119 A.3d 1012, 1019 (Pa. Super. 2015) (citations omitted and formatting altered). It is well-established that this Court may affirm on any basis supported by the record. **See Lynn v. Nationwide Ins. Co.**, 70 A.3d 814, 823 (Pa. Super. 2013).

Rule of Civil Procedure 1035.2, which governs motions for summary judgment, states:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Our Supreme Court has explained that "[Rule 1035.2] is intended to foster, not inhibit, the discretion of the trial court. The purpose of the Rule is to weed out meritless cases after discovery has been completed, not to eliminate meritorious claims prematurely before discovery is completed." **Wolloch v. Aiken**, 815 A.2d 594, 596 (Pa. 2002) (citation omitted).

### Costs of Response

In their first issue, Appellants argue that the trial court erred in denying their motion for summary judgment because Appellees have not incurred any costs of response, and therefore, have failed to state a claim under the HSCA. Appellants' Brief at 20-33. Appellants note that under the HSCA, a party who is "responsible for a release or threatened release of a hazardous substance" is liable for the "[reasonable and necessary or appropriate] costs of response incurred by any other person." **Id.** at 22-23 (quoting 35 P.S. § 6020.702(a)(3)) (some formatting altered). Appellants contend that "person" as used in Section 6020.702 of the HSCA should be interpreted in conjunction with Section 6020.1115, which provides a private cause of action for any person who has "experienced or [are] threatened with personal injury or property damage as a result of a release of a hazardous substance." **Id.** at

- 6 -

22-23, 28-31; *cf. id.* at 5, 13, 15 (characterizing Appellees' cause of action as arising under Section 6020.702 of the HSCA).

Further, Appellants argue that Appellees' attorneys cannot bring a citizen suit in their own right under Section 6020.1115(a) of the HSCA because the attorneys did not suffer any personal injury or property damage. *Id.* at 24. Appellants contend that "allowing an aggrieved person to recover a monetary remedy based on the voluntary incurrence of costs by a nonaggrieved, non-party attorney—where that non-party concededly could not bring a private HSCA suit in the first place—turns the law upside down." *Id.* (emphasis omitted). Appellants assert that if "the Legislature intended to authorize the recovery of costs incurred as a result of a statutory violation by a party without standing to seek a remedy for that violation, it would have said so—and expressly." *Id.* at 25. Therefore, Appellants claim that persons authorized to sue under Section 6020.1115 of the HSCA can only recover their own costs of response under Section 6020.702 and cannot recover costs paid for by a third party.

Appellants additionally argue that because the HSCA is modeled after federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980[6] (CERCLA), this Court should look at cases interpreting the

---

[6] 42 U.S.C. §§ 9601-9675.

CERCLA. ***Id.*** at 25-26.[7] Appellants assert that the cost-recovery provision of the CERCLA, 42 U.S.C. § 9607(a)(4)(B), is virtually identical to Section 6020.702 of the HSCA. ***Id.*** Appellants discuss several federal cases concluding that Section 9607 of the CERCLA does not permit recovery of costs incurred by third parties when the plaintiff does not have an obligation to reimburse those third parties. ***Id.*** at 26-28; ***see also*** Appellants' Reply Brief at 11-13. Therefore, Appellants conclude that the trial court erred in holding that "costs of response incurred by any other person[,]" as used in Section 6020.702 of the HSCA, includes the costs of environmental sampling paid for by third parties, *i.e.*, Appellees' attorneys.

The rules of statutory construction are well-settled:

The Statutory Construction Act, 1 Pa.C.S. §§ 1901-1991, sets forth principles of statutory construction to guide a court's efforts with respect to statutory interpretation. In so doing, however, the Act expressly limits the use of its construction principles. The purpose of statutory interpretation is to ascertain the General Assembly's intent and to give it effect. 1 Pa.C.S. § 1921(a). In discerning that intent, courts first look to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning. ***See*** 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Courts may apply the rules of

_____

[7] In the statement of the case portion of their brief, Appellants include an overview of the history of the HSCA and assert that it is modeled after the CERCLA. Appellants' Brief at 6. Appellants also cite several cases interpreting the HSCA, the CERCLA, or both. ***Id.*** at 6-11. Our Rules of Appellate Procedure strictly prohibit argument in a statement of the case. ***See*** Pa.R.A.P. 2117(b) (stating "[t]he statement of the case shall not contain any argument").

statutory construction only when the statutory language is not explicit or is ambiguous. 1 Pa.C.S. § 1921(c).

. . . We must read all sections of a statute "together and in conjunction with each other," construing them "with reference to the entire statute." 1 Pa.C.S. § 1922(2). When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. Statutory language must be read in context, together and in conjunction with the remaining statutory language.

Every statute shall be construed, if possible, to give effect to all its provisions. We presume the legislature did not intend a result that is absurd, impossible, or unreasonable, and that it intends the entire statute to be effective and certain. When evaluating the interplay of several statutory provisions, we recognize that statutes that relate to the same class of persons are *in pari materia* and should be construed together, if possible, as one statute.

Also, when interpreting a statute we must listen attentively to what the statute says, but also to what it does not say.

*Retina Assocs. of Greater Phila., Ltd. v. Retinovitreous Assocs., Ltd.*, 176 A.3d 263, 270 (Pa. Super. 2017) (some citations omitted and some formatting altered).

Our Supreme Court has explained:

In 1988, the General Assembly enacted HSCA based, in part, on a finding that hazardous substances released into the environment pose a substantial threat to the health and welfare of the residents of the Commonwealth. 35 P.S. § 6020.102(2). The General Assembly decided that traditional legal remedies were not adequate to prevent the release of hazardous substances into the environment. 35 P.S. § 6020.102(5). It found that "[e]xtraordinary enforcement remedies and procedures are necessary and appropriate to encourage responsible persons to clean up hazardous sites and to deter persons in possession of hazardous substances from careless or haphazard management." 35 P.S. § 6020.102(9). Therefore, it created HSCA, which is an "independent site cleanup program" designed to "promptly and comprehensively address the problem of hazardous substance

releases in this Commonwealth, whether or not these sites qualify for cleanup under [CERCLA]." 35 P.S. 6020.102(8).

***Redland Soccer Club v. Department of Army***, 696 A.2d 137, 141 (Pa. 1997) (**Redland**).

The HSCA states that "[i]t shall be unlawful for a person to . . . [c]ause or allow a release of a hazardous substance." 35 P.S. § 6020.1108(1). For the purposes of the HSCA, "release" includes "pumping, . . . emitting, emptying, . . . escaping, . . . discharging, dumping or disposal into the environment." 35 P.S. § 6020.103. Further, the HSCA defines "response", in relevant part, as:

> Action taken in the event of a release or threatened release of a hazardous substance or a contaminant into the environment to study, assess, prevent, minimize or eliminate the release in order to protect the present or future public health, safety or welfare or the environment. The term includes, but is not limited to:
>
> \* \* \*
>
> (2) Actions at or near the location of the release, such as studies; health assessments; storage; confinement; . . . cleanup or removal of released hazardous substances, contaminants or contaminated materials; . . . and monitoring and maintenance reasonably required to assure that these actions protect the public health, safety, and welfare and the environment.
>
> \* \* \*
>
> (5) Other actions necessary to assess, prevent, minimize or mitigate damage to the public health, safety or welfare or the environment which may otherwise result from a release or threatened release of hazardous substances or contaminants.
>
> (6) Investigation, enforcement, abatement of nuisances, and oversight and administrative activities related to interim or remedial response enforcement, abatement of nuisances, and

- 10 -

oversight and administrative activities related to interim or remedial response.

*Id.*

The HSCA defines "person", as "[a]n individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, authority, interstate body or other legal entity which is recognized by law as the subject of rights and duties." *Id.*

The HSCA authorizes citizen suits as follows:

**§ 6020.1115. Citizen suits**

**(a) General rule.**—A person who has experienced or is threatened with personal injury or property damage as a result of a release of a hazardous substance may file a civil action against any person to prevent or abate a violation of this act or of any order, regulation, standard or approval issued under this act.

**(b) Jurisdiction.**—The courts of common pleas shall have jurisdiction over any actions authorized under this section. . . . The court may grant any equitable relief; . . . and may award litigation costs, including reasonable attorney and witness fees, to the prevailing or substantially prevailing party whenever the court determines such an award is appropriate.

35 P.S. § 6020.1115(a)-(b).

The HSCA provides the following remedies:

**(a) General rule.**—A person who is responsible for a release or threatened release of a hazardous substance from a site . . . is strictly liable for the following response costs and damages which result from the release or threatened release or to which the release or threatened release significantly contributes:

(1) Costs of interim response which are reasonable in light of the information available to the [Department of Environmental Protection (DEP)] at the time the interim response action was taken.

- 11 -

(2) Reasonable and necessary or appropriate costs of remedial response incurred by the United States, the Commonwealth or a political subdivision.

(3) **Other reasonable and necessary or appropriate costs of response incurred by any other person.**

(4) Damages for injury to, destruction of or loss of natural resources within this Commonwealth or belonging to, managed by, controlled by or appertaining to the United States, the Commonwealth or a political subdivision. This paragraph includes the reasonable costs of assessing injury, destruction or loss resulting from such a release.

(5) **The cost of a health assessment or health effects study.**

35 P.S. § 6020.702(a) (emphases added).

In **Redland**, the Army disposed of various kinds of waste at a landfill at the New Cumberland Army Depot from "1917 until sometime in the 1950s[.]" **Redland**, 696 A.2d at 139. When the Army closed the landfill, it covered the area with "a layer of soil and coal ashes." **Id.** The Army subsequently sold the land on which the depot was located to the surrounding township. **Id.** The township converted that land into a park, which included soccer fields. **Id.** In 1987, the Army conducted environmental testing in the park, which revealed the presence of various toxic materials. **Id.** A group of plaintiffs composed of people who used the soccer fields, worked in the park, and lived near the park sued the Army in state court in 1992, and pled "a cause of action under HSCA, seeking, among other things, a medical monitoring trust fund and attorney fees." **Id.** at 140; **see also id.** at 142 (stating that the plaintiffs "requested equitable relief under section 6020.1115(b) in the form of a

medical monitoring trust fund, which they claim is a cognizable response cost under section 6020.702(a)").

With respect to the plaintiffs' claim for medical monitoring damages, the *Redland* Court held:

> Although section 6020.702(a) does not explicitly use the words "medical monitoring trust fund", we believe that the terms "costs of response", "health assessment" and "health effects study" in section 6020.702(a) encompass such a remedy. Our interpretation of these terms is consistent with the General Assembly's clearly stated intent "to provide new remedies to protect the citizens of this Commonwealth against the release of hazardous substances . . . ." 35 P.S. § 6020.102(5).

*Id.* at 142 (footnote omitted). The Court further noted that "[m]edical surveillance damages promote early diagnosis and treatment of disease or illness resulting from exposure to toxic substances caused by a tortfeasor's negligence. Allowing recovery for such expenses avoids the potential injustice of forcing an economically disadvantaged person to pay for expensive diagnostic examinations necessitated by another's negligence." *Id.* at 145 (quoting *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 976 (Utah 1993)) (internal citations omitted).

Additionally, the Army argued that the trial court erred in awarding attorney fees to the plaintiffs because the plaintiffs sued under Section 6020.702 of the HSCA, which does not authorize attorney fees. *Id.* at 147. The Army further contended that "because CERCLA does not authorize attorney fees for a private plaintiff seeking response costs, [the Supreme Court] should interpret HSCA to impose a similar limitation." *Id.* (citation

omitted). Our Supreme Court explained a citizen suit under the HSCA as follows:

> Section 6020.1115 is the only section of HSCA that authorizes citizen suits, and thus, it is the only section under which the Redland Plaintiffs could have brought suit. Section 6020.702 specifies various categories of relief for which a defendant may be liable under HSCA. A plaintiff cannot bring a citizen suit under section 6020.702. Instead, a plaintiff must bring a citizen suit under section 6020.1115 and may seek the relief available to private plaintiffs included in section 6020.702, . . . .

*Id.* at 147.[8]

The **Redland** Court also rejected the Army's argument that the Court should interpret the HSCA as only providing remedies that are available under the CERCLA, holding:

> When the General Assembly enacted HSCA, it was fully aware of the existence of CERCLA, but decided that an "independent site cleanup program" was necessary to protect the public health and environment. 35 P.S. § 6020.102(8). The General Assembly also decided that "new remedies" were necessary to protect the citizens of this Commonwealth from the release of hazardous substances. 35 P.S. § 6020.102(5). Therefore, we are not persuaded that the unavailability of a remedy under CERCLA should control whether the same remedy is available under HSCA.

*Id.* at 147-48 (footnote omitted).

Here, the trial court explained:

> "Response costs" are defined in HSCA as an "[a]ction taken in the event of a release or threatened release of a hazardous substance

---

[8] The Court also noted that Section 6020.1115(b) expressly authorizes a court to award attorney fees to the prevailing party if the court determines that such an award is appropriate. **Redland**, 696 A.2d at 147.

or a contaminant into the environment to study, assess, prevent; minimize or eliminate the release in order to protect **the present or future** public health, safety or welfare or the environment." 35 P.S. § 6020.103 (emphasis added) [(defining "response")]. Further, in reading section [6020.]702, the language states "[a] person who is responsible for a release or threatened release . . . is strictly liable for [reasonable and necessary response costs incurred by any other person] which result from the release or threatened release." [35 P.S.] § 6020.702(a).

The court concludes that the investigatory expenses already incurred by [Appellees'] attorneys qualify under 35 P.S. §§ 6020.103 & 6020.702(3). At argument, [Appellees'] attorneys acknowledged that [Appellees] have not personally incurred any costs: the testing of the properties for hazardous materials has been borne by counsel thus far because [Appellees] do not have the financial means to incur the costs on their own. . . .

* * *

[Appellees'] attorneys' firms, who are working on a contingency basis for [Appellees], would seem to fit into the definition of a person. Neither 35 P.S. § 6020.103 nor 35 P.S. § 6020.702(a)(3) state that the person aggrieved or person harmed must personally incur the expense. The court did not find any state case requiring that a litigant personally incur an expense rather than their legal representative on their behalf. Additionally, testing costs paid by counsel are typical recoverable costs ("study", "assess") under section 6020.103 of HSCA. Therefore, the court concludes that the testing by CORE Environmental Services, [*i.e.*,] dust wipes and soil sampling, for contaminants on the [Appellees'] properties prior to July 7, 2017, when the complaint was filed are a "response" cost as defined by HSCA.

The court finds that it would be inequitable to require that the persons harmed incur the expense if they personally are unable. A mandate such as this would effectively bar persons from taking advantage of HSCA if they could not afford to cover the response costs. It is beyond cavil that testing of hazardous waste can be an expensive undertaking, especially in a class action context such as this. Imposing such a mandate would undermine the purpose of HSCA as well, as it would hinder the remediation efforts the HSCA seeks to promote. "[W]e should avoid construing a statute in such a way as would lead to an absurd result." ***Holland v. Marcy***, 883 A.2d 449, 456 (Pa. 2005). This court believes that

- 15 -

> forcing individual persons to personally bear costs they cannot afford themselves in order to hold responsible parties accountable and remediate hazardous environments would be an absurd result contrary to the spirit of HSCA.

Trial Ct. Op. & Order, 12/13/22, at 6-8 (footnotes and some citations omitted).

Based on our review of the record, we discern no error of law or abuse of discretion by the trial court. *See Hildebrand*, 165 A.3d at 971. Specifically, we agree with the trial court that the cost of environmental testing is a "response cost" within the meaning of the HSCA. *See* 35 P.S. §§ 6020.103, 6020.702(a)(3). We also agree with the trial court that "any other person" as used in Section 6020.702 of the HSCA is not limited to those persons who may bring a citizen suit under Section 6020.1115, which consist of any "person who has experienced or is threatened with personal injury or property damage as a result of a release of a hazardous substance[,]" because there is nothing in the text of Section 6020.702 to indicate that the Legislature intended to limit the remedy in that manner. *Compare* 35 P.S. § 6020.702(a)(3) *with id.* at § 6020.1115. Allowing Appellees to recover damages related to environmental testing, the costs of which have so far been borne by Appellees' attorneys, is consistent with our Supreme Court's decision in *Redland* that medical monitoring damages could be awarded under the HSCA. *See Redland*, 696 A.2d at 145 (observing that allowing the plaintiffs to recover the costs of medical monitoring "avoids the potential injustice of forcing an economically disadvantaged person to pay for expensive diagnostic examinations necessitated by another's negligence" (citation omitted)).

Additionally, we are persuaded by the **Redland** Court's conclusion in its precedential decision that the absence of a remedy under the CERCLA is not dispositive as to whether that remedy is available under the HSCA. **See id.** at 147-48. Therefore, to the extent that Appellants rely on cases interpreting and applying the CERCLA, they are not controlling with respect to this issue. For these reasons, we conclude that Appellants are not entitled to relief on this claim.

## Equitable Relief

In their second issue, Appellants argue that the trial court erred in denying their motion for summary judgment with respect to Appellees' claim for the costs of future testing and remediation of the affected properties. Appellants' Brief at 33-46. Specifically, Appellants contend that Sections 6020.702 and 6020.1115 of the HSCA do not authorize relief in the form of "un-incurred future costs." **Id.** at 35-36. Further, Appellants claim that under Section 6020.1115 of the HSCA, a court may only grant equitable relief to prevent or abate "ongoing or future releases of hazardous substances, not [to] compensate[e] for past, completed releases." **Id.** at 33. Appellants assert that the HSCA gives the DEP exclusive authority to issue orders and seek injunctions commanding a party responsible for a release to take a response action. **Id.** at 36 (citing 35 P.S. §§ 6020.505(c), 6020.505(d)(1), 6020.1102)). Therefore, Appellants argue that Appellees' request for an order directing Appellants to pay for future testing for and remediation of lead and zinc contamination exceeds the scope of equitable relief authorized for a

citizen suit under the HSCA. *Id.* at 33-34, 36-37; *see also* Appellants' Reply Brief at 14-24 (arguing that the HSCA does not authorize "test-then-clean" relief). Appellants also contend that Appellees' requested relief is not equitable in nature because it is a request for monetary relief. Appellants' Brief at 37-38. Appellants further claim that *Redland* is distinguishable because in that case, our Supreme Court held that Section 6020.702(a)(5) of the HSCA authorized an award of the costs of medical monitoring as "the cost of a health assessment or health effects study[,]" but Appellees are requesting the costs of future property testing. *Id.* at 39 (citing *Redland*, 696 A.2d at 142). Appellants also note that federal courts have concluded that the CERCLA does not authorize private parties to seek injunctive relief related to environmental cleanup. *Id.* at 39-40.

As stated above, in *Redland*, our Supreme Court concluded that although 6020.702(a) of the HSCA did not explicitly refer to a "medical monitoring trust fund," that remedy was encompassed by the terms "costs of response," "health assessment," and "health effects study" used in Section 6020.702(a). *Redland*, 696 A.2d at 142. The Court further noted:

> A claim for a medical monitoring trust fund is significantly different from a claim for a lump sum award of damages. A trust fund compensates the plaintiff for only the monitoring costs actually incurred. In contrast, a lump sum award of damages is exactly that, a monetary award that the plaintiff can spend as he or she sees fit. . . .
>
> \* \* \*
>
> We, too, believe that a medical monitoring trust fund is a more appropriate remedy than lump sum damages in mass exposure

- 18 -

toxic tort cases. However, because the Redland Plaintiffs are seeking only a medical monitoring trust fund, we offer no opinion concerning whether lump sum damages are recoverable under HSCA.

*Id.* at 142 n.6 (citations omitted). Further, the purpose of medical monitoring damages is to monitor against "future illness beyond that which is recommended for everyone." *Id.* at 144 (citation omitted); *accord Ford ex rel. Pringle v. Philadelphia Hous. Auth.*, 848 A.2d 1038, 1062-63 (Pa. Cmwlth. 2004) (affirming the award of damages for medical monitoring in a negligence action where a medical expert opined that the plaintiff was a high risk of developing future medical consequences from lead exposure).[9]

Here, the trial court explained:

Turning next to [Appellants'] second argument in favor of granting summary judgment on [Appellees'] HSCA claims, [Appellants] argue[] that the court has no authority to grant the [Appellees'] requested relief in the form of requiring [Appellants] to pay for sampling of the properties along with the remediation. The court again disagrees.

This court first finds support from the Pennsylvania Supreme Court in *Redland* . . . .

\* \* \*

. . . [T]he Court discussed how a claim for medical monitoring is very different from for lump sum damages. "A trust fund compensates the plaintiff for only the monitoring costs actually incurred. In contrast, a lump sum award of damages is exactly that, a monetary award that the plaintiff can spend as he or she sees fit." [*Redland*, 696 A.2d at 142 n.6].

---

[9] Although decisions of the Commonwealth Court are not binding on this Court, they may provide persuasive authority. *See Maryland Cas. Co. v. Odyssey Contracting Corp.*, 894 A.2d 750, 756 n.2 (Pa. Super. 2006).

> In our view, the use of a court-supervised fund to administer medical-surveillance payments in mass exposure cases . . . is a highly appropriate exercise of the Court's equitable powers. . . . Such a mechanism offers significant advantages over a lump-sum verdict. . . . [A] fund would serve to **limit the liability of defendants to the amount of expenses actually incurred**. A lump-sum verdict attempts to estimate future expenses, but cannot predict the amounts that actually will be expended for medical purposes. Although conventional damage awards do not restrict plaintiffs in the use of money paid as compensatory damages, mass-exposure toxic-tort cases involve public interests not present in conventional tort litigation.

*Id.* [at 142-43 n.6] (emphasis added). In other words, expenses actually "incurred" refers to that which is specifically needed to remedy a particular matter or to address a particular purpose, and not a descriptor of issuing awards for only expenses incurred as of the day of litigation and forbearing any future expenses directly related to the harm. . . . Under HSCA, the legislature authorized the recovery of "response" costs, which are specifically defined "remedial" measures.

\* \* \*

This court finds [Appellees'] requested relief is cognizable under HSCA and [Appellants'] motion for summary judgment must be denied. Within HSCA, the definition of "response" includes "action taken in the event of a release . . . to study [and] assess . . . the release in order to protect the present or future public health, safety or welfare of the environment." [35 P.S.] § 6020.103. More specifically, "response" includes "actions at or near the location of the release, such as studies . . ." and "[o]ther actions necessary to assess . . . damage to the public health, safety or welfare or the environment which may otherwise result from a release . . . of hazardous substances or contaminants." *Id.* at (2) & (5). Additionally, the "response costs" must be "reasonable and necessary or appropriate costs." § 6020.702(a)(3). . . .

\* \* \*

Further, this court believes that the extent of the testing or the defining of its parameters can be established through expert witness testimony without speculation. *See* [*Redland*, 696 A.2d] at 145.

* * *

> Therefore, the court believes [Appellees'] requested equitable relief is cognizable and fair. [Appellants] caused the release of hazardous substances into the Donora area for a period of 42 years. Under § 6020.702(a), responsible parties are strictly liable for "reasonable and necessary or appropriate" costs to remediate the harm. A basic, fundamental step in assessing what remediation needs to occur is testing the properties to determine whether and to what extent they need to be remediated. The court believes the expenses for testing are recoverable by [Appellees] regardless of whether it is an upfront payment in the form of a trust fund like vehicle or reimbursement from the [Appellants].

Trial Ct. Op. & Order, 12/13/22, at 8-9, 11-12, 14 (footnotes and some citations omitted).

Based on our review of the record, we discern no error of law or abuse of discretion by the trial court. *See Hildebrand*, 165 A.3d at 971. Specifically, we agree with the trial court that the statutory remedy of "reasonable and necessary or appropriate costs of response incurred by any other person" does not restrict a plaintiff from recovering future response costs. In *Redland*, our Supreme Court upheld an award of medical monitoring damages under the HSCA, which would go towards future medical testing of the plaintiffs who had been exposed to the hazardous substances that the Army had buried on the site where a park was later built. *See Redland*, 696 A.2d at 142-47.

Further, we reject Appellants' argument that Section 6020.1115 only permits equitable relief for ongoing or future releases. Nothing in the text of Section 6020.1115 indicates that an action to "abate a violation of" the HSCA

only applies to ongoing releases. To the contrary, that section contemplates citizen suits for completed releases because it refers to "[a] person who **has experienced** or is threatened with personal injury or property damage as a result of a release of a hazardous substance . . . ." **See** 35 P.S. § 6020.1115(a) (emphasis added).

Additionally, Appellants' interpretation conflicts with existing case law. In **Redland**, the Army ceased dumping hazardous waste on the future site of the park in the 1950s and subsequently buried that waste. **See Redland**, 696 A.2d at 139. Our Supreme Court held that medical monitoring damages are an equitable remedy under the HSCA. **See id.** at 147. At no point did the **Redland** Court opine that that the plaintiffs could not bring a citizen suit under Section 6020.1115(a) of the HSCA because the Army's release of hazardous substances had ended approximately forty years before the litigation began. For these same reasons, we reject Appellants' argument that the HSCA provides the DEP with exclusive power to seek injunctive relief for past violations of the HSCA as inconsistent with **Redland**. Lastly, as previously stated, to the extent that Appellants rely on cases applying the CERCLA, they are not controlling here. For these reasons, we conclude that Appellants are not entitled to relief on this issue.[10]

_____

[10] Additionally, Appellants argue that the trial court's order cannot be affirmed under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541. Appellants' Brief at 41-46. However, Appellants did not include their claim that the trial court's order violates the Declaratory Judgments Act in the statement of
*(Footnote Continued Next Page)*

**Trespass**

In their third issue, Appellants argue that the trial court erred by denying Appellants' motion for summary judgment on Appellees' trespass count. Appellants' Brief at 46-54. Specifically, Appellants contend that "there is no basis in existing Pennsylvania law to find that the airborne intrusion of such invisible particulates constitutes a trespass—as opposed to a nuisance." *Id.* at 46. Appellants claim that "Pennsylvania courts have specifically considered dust and similar invisible airborne particulates to fall within the realm of nuisance claims, not trespass." *Id.* at 47 (citing *Karpiak v. Russo*, 676 A.2d 270, 274 (Pa. Super. 1996); *Harford Penn-Cann Serv., Inc. v. Zymblosky*, 549 A.2d 208, 209 (Pa. Super. 1988)). Appellants argue that this is because a claim of nuisance arises from interference with "another's interest in the private use and enjoyment of land", while "liability for trespass arises where there is interference with one's 'possession' of land[.]" *Id.* (citations omitted). Appellants contend that the trial court erred by relying on *Jones v. Wagner*, 624 A.2d 166 (Pa. Super. 1993) because *Jones* discussed tangible airborne intrusions such as tree branches, not invisible airborne particulates. *Id.* at 49. Appellants note that other jurisdictions have held that the intrusion of dust or invisible particles onto another's property give rise to a claim for

_____

questions involved in their appellate brief. Therefore, it is waived. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

nuisance, not trespass. *Id.* at 48-49 (citing, *inter alia*, **Adams v. Cleveland-Cliffs Iron Co.**, 602 N.W.2d 215 (Mich. Ct. App. 1999)).

Appellants alternatively suggest that if this Court concludes that the intrusion of invisible particulates gives rise to a cause of action for trespass, that this Court should "recognize the prevailing rule in other jurisdictions that requires proof of substantial harm as an element of an airborne-intrusion trespass claim." *Id.* at 50-53 (citing, *inter alia*, **Brown v. Whirlpool Corp.**, 996 F.Supp.2d 623, 641 (N.D. Ohio 2014)) (footnote omitted). Appellants conclude that under this standard, Appellees are not entitled to relief because they are requesting an order for Appellants to test their properties for the presence of lead, and therefore, have not established an intrusion. *Id.* at 53.

Appellees respond that this Court "should side with the overwhelming majority of other jurisdictions and the earlier unpublished decision of this Court in recognizing that the intrusion of particulates and other invisible substances can constitute a trespass." Appellees' Brief at 50 (citing **Oliver v. Gasdik**, 1390 EDA 2019, 2020 WL 1903952 (Pa. Super. April 17, 2020) (unpublished mem.)).[11] Appellees further argue that "[t]he majority of courts that have weighed in on this specific issue have found in favor of allowing trespass claims for intrusions by invisible particles." *Id.* at 53-56 (citing, *inter alia*, **Borland v. Sanders Lead Co., Inc.**, 369 So.2d 523, 529-30 (Ala.

_____

[11] **See** Pa.R.A.P. 126(b) (providing that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

- 24 -

1979)). Appellees note that the trial court did not address whether their trespass claim requires Appellees to demonstrate substantial harm because at the time the trial court denied Appellants' motion for summary judgment, the parties had not exchanged their expert reports. *Id.* at 57.

Here the trial court explained:

As for [Appellants'] claim that [Appellees] have not submitted any evidence of the levels of lead in the soil and dust on their properties that would support a trespass claim for compensatory damages, the discovery period has not concluded. [Appellees'] experts have not yet submitted their reports. Additionally, this court finds, as noted above, that there is support for having [Appellants] pay for sample testing of properties pursuant to the HSCA claim. Therefore, this particular issue is not ripe for disposition.

Trial Ct. Op. & Order, 12/13/22, at 17 n.19.[12]

Based on our review of the record, we discern no error of law or abuse of discretion by the trial court. *See Hildebrand*, 165 A.3d at 971. As stated above, Appellants filed their motion for summary judgment on Appellees' trespass claim prior to the discovery deadline for Appellees to produce their expert reports. *See* Trial Ct. Op. & Order, 12/13/22, at 17 n.19; *see also* R.R. at 294a, 297a-99a, 306a-13a (Appellees' response to Appellants' motion for summary judgment on the trespass claim). Therefore, we agree with the trial court's conclusion that Appellants' motion for summary judgment on

---

[12] The trial court also concluded that the airborne intrusion of invisible particulates could constitute a trespass. *See* Trial Ct. Op. & Order, 12/13/22, at 15-17.

Appellees' trespass claim was premature.[13] **See Wolloch**, 815 A.2d at 596; Pa.R.C.P. 1035.2(2). Therefore, Appellants are not entitled to relief on this issue.

For the foregoing reasons, we affirm the trial court's order denying Appellants' motion for summary judgment.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/01/2024

---

[13] Because we conclude that the trial court's order properly denied Appellants' motion for summary judgment regarding trespass as premature, we decline to address, at this time, whether Pennsylvania law recognizes a cause of action for trespass for the airborne intrusion of invisible particulates. **See Lynn**, 70 A.3d at 823 (explaining that this Court may affirm a trial court's ruling on any basis supported by the record). Further, to the extent that Appellees suggest that their expert reports, which were produced subsequent to the trial court's December 13, 2022 order, create a genuine issue of material fact that precludes granting summary judgment, we will not consider that argument because those reports were not part of the record at the time that the trial court made its decision.