J-S17015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BIF III HOLTWOOD, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CRAIG P. SANFORD, MARY JO SANFORD, H/W, AND KARA E. SANFORD AND CRAIG ROBERT SANFORD | : | No. 2087 EDA 2024 |

Appeal from the Order Entered July 30, 2024
In the Court of Common Pleas of Wayne County Civil Division at No(s):
2020-00295

| | | |
|---|---|---|
| BIF III HOLTWOOD, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CRAIG P. SANFORD, MARY JO SANFORD, H/W, AND KARA E. SANFORD AND CRAIG ROBERT SANFORD | : | No. 2301 EDA 2024 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered July 30, 2024
In the Court of Common Pleas of Wayne County Civil Division at No(s):
2020-00295

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.:              **FILED JUNE 13, 2025**

BIF III Holtwood, LLC (Holtwood), appeals, and Craig P. Sanford and

Mary Jo Sanford, husband and wife, Kara E. Sanford, and Craig Robert Sanford

(collectively, Defendants) cross-appeal, the trial court's order awarding Holtwood $18,596.75 as contractual attorney's fees and costs. After careful review, we reverse and remand for further proceedings.

This case has its origins in prior litigation between Defendants and Holtwood's predecessor-in-title, PPL Holtwood, LLC (PPL Holtwood). As described by the trial court in the prior case,

> PPL Holtwood … is the fee simple owner of certain lands surrounding and including Lake Wallenpaupack [(the Lake), located in] Wayne County, Pennsylvania [(Property),] and holds a license from the Federal Energy Regulatory Commission [(FERC)] (hereinafter, "FERC License")[, pursuant to the Federal Power Act, 16 U.S.C. §§ 791a-828c,] to operate and maintain a 44-megawatt hydroelectric facility known as the Wallenpaupack Hydroelectric Project [(Project)].
>
> … [Defendants] own real estate located at 15 North Briar Hill Road, Paupack Township, Wayne County, Pennsylvania (hereinafter [] "[Defendants' property]").
>
> ….
>
> Under [PPL Holtwood's] FERC License, [PPL Holtwood] has established a Public Lake Use and Shoreline Use Permitting Policy (hereinafter, "Policy"). Pursuant to the Policy, eligible front-lot property owners, of which there are One Thousand Four Hundred and Ninety-Eight (1,498), are afforded the opportunity to make certain private residential uses of [the Property] in accordance with the Policy and upon express written approval of [PPL Holtwood] in the form of Permits or License Agreements. Because [Defendants' property] abuts the disputed area, they are considered front-lot owners, such that [**Defendants**] **must make application for and obtain a** [**p**]**ermit or** [**l**]**icense and pay any fees associated thereto in order to make any type of private residential or commercial use of** [**the Property**]**.**
>
> Defendants are familiar with the Policy, having received a shoreline use permit on June 11, 2004, which expired on June 11,

- 2 -

2005, and an [e]arthmoving [p]ermit on August 12, 2004, which expired at the time the work was completed….

Trial Court Opinion, 10/2/12, at 1-2 (emphasis added).

In the prior action, PPL Holtwood sought a declaration that it owned the Lake and its shoreline, and to permanently enjoin Defendants from utilizing the Property without the proper permits and licenses. On October 29, 2013, the trial court entered an order granting PPL Holtwood's request for a permanent injunction

enjoining the owner of [Defendants'] property, their heirs, successors, assigns, agents, invitees or tenants from occupying, possessing, using or altering in any way [the P]roperty except in accordance with [PPL Holtwood's] Policy[,] as may be modified from time to time….

Trial Court Order, 10/29/13. In its order, the trial court further noted Defendants' "continued failure to abide by this [c]ourt's [o]rders and the polic[ies] of [] PPL Holtwood … specifically pertaining to the issuance of dock permits." *Id.*

As alleged by Holtwood in the instant action,

Lake Wallenpaupack was originally owned and managed from the time of its construction in the 1920's until 2015 by PPL Holtwood [] and its predecessors, which at all relevant times enforced a Public Lake Use and Shoreline Use Permitting Policy that applied to … Defendants.

In 2015, Holtwood LLC, a subsidiary of Talen Energy, acquired Lake Wallenpaupack and the hydroelectric facility from PPL Holtwood ….

On April 1, 2015, [Holtwood] acquired Lake Wallenpaupack and the [Project] from Holtwood, LLC.

Complaint, 9/2/20, ¶¶ 8-10 (numerical paragraph designations omitted).

Pursuant to its FERC License, Holtwood adopted a new Policy, effective June 2015, to replace PPL Holtwood's similar Policy. *Id.* ¶ 13. The Policy's stated purpose is to, *inter alia*,

> promote the "safe use of Project lands and waters available for general public recreational uses", controlling the "uses of Project lands and waters available or general public recreational uses", controlling the "uses of its lands and waters to promote their full use and enjoyment by the general public", minimizing public safety concerns, and working with law enforcement authorities and governmental agencies to "establish the means to strictly enforce this policy."

*Id.* ¶ 12 (capitalization modified). Therefore, Holtwood alleged,

> [a]n Owner seeking to make any type of private residential use of Holtwood property must make application for and obtain a Permit or license and pay such fees as are established by the Policy's Permit Fee Schedule including, but not limited to, a Shoreline Use Application Fee and annual standard use fees that vary based upon the anticipated and actual uses made on Holtwood's property.
>
> ….
>
> Section III. B. of the policy identifies certain prohibited uses and activities of Owners including, *inter alia*, prohibitions against: obstructions that limit public access to or segregate project lands; any encroachment or activity whatsoever that in Holtwood's view interferes with the full enjoyment of its lands and the [L]ake by neighboring property owners or the general public; and any other use that, in Holtwood's *sole* opinion, degrades the scenic, recreational or environmental value of the … [P]roject.

*Id.* ¶¶ 16, 18-20 (emphasis in original).

As alleged in the complaint, Defendants submitted a new application for Standard Shoreline Use Permits on May 23, 2016. *Id.* ¶ 37. Holtwood denied

the application. *Id.* ¶ 38. However, Holtwood subsequently granted Defendants a permit in 2017, contingent upon Defendants' compliance with the Policy. *Id.* ¶ 39. The permit authorized Defendants to use one mooring buoy, one float and one dock, with the dock being positioned "as close as possible to the center of [Defendants'] property." *Id.* ¶ 41.

In its complaint, Holtwood alleged a series of Policy violations, beginning in 2018, regarding Defendants' actions pertaining to their neighboring property owner, Richard Witkowski (Witkowski). *Id.* ¶ 43. Holtwood had issued Witkowski a Standard Shoreline Use Permit authorizing Witkowski to install a path to the Lake, a patio, a fire pit, and a dock in front of Witkowski's property. *Id.* ¶ 44. Following Witkowski's installation of the dock, Defendants demanded that Witkowski remove his dock, and threatened Witkowski. *Id.* ¶ 45.

During the Memorial Day Weekend in 2018, one of the Defendants drove a backhoe/loader to dredge the lake near Defendants' boat ramp. *Id.* ¶ 46. Defendants did not have a permit authorizing dredging or vegetation disturbance. *Id.* ¶ 47. The next holiday weekend, Defendants launched a 20-foot pontoon platform/dock, and buoyed it in front of Witkowski's dock, thereby blocking guest boaters from Witkowski's property. *Id.* ¶ 48. Defendants additionally placed a "fully extended scissor lift" from which they hung a noose that was painted red. *Id.* ¶ 49. Defendants took these actions without authorizing permit(s), and in violation of their own permit.

On June 13, 2019, Holtwood notified Defendants, in writing, that they risked the revocation of their permit based upon Defendants' Policy violations. *Id.*

On August 29, 2019, Holtwood demanded that Defendants remove the dock blocking Witkowski's property. *Id.* ¶ 52. Holtwood directed Defendants to place the dock in the center of Defendants' property, "so as not to encroach or impose upon the water space of another front lot owner," as required by Policy Section III (D)(1). *Id.* Notwithstanding, Defendants failed to comply. *Id.* ¶ 53.

In September 2019, two of the Defendants confronted and threatened Witkowski and his wife, requiring Pennsylvania State Police involvement. *Id.* Further, Holtwood alleged that Defendants' boat was observed circling swimmers, boaters and jet skiers "at close range, in a dangerous, terrorizing and threatening manner, in a 'no wake' zone." *Id.* ¶ 54. In May 2020, Defendants engaged an operator to use a backhoe to place a large log to block Witkowski's access to the Lake. *Id.* ¶ 56.

By letter dated July 1, 2020, Holtwood revoked Defendants' permit and directed Defendants to remove all unauthorized uses from the Lake and Holtwood property on or before July 15, 2020. *Id.* ¶ 42. Defendants failed to comply. *Id.* ¶ 58.

Holtwood filed the instant action against Defendants on September 2, 2020, requesting the following relief:

COUNT I: Preliminary Injunction. Holtwood sought an injunctive order requiring Defendants to remove unpermitted uses from the Property, and to refrain from future policy violations.

COUNT II: Ejectment. Holtwood sought an order enjoining Defendants from using, occupying or degrading the Property; compelling Defendants to remove unpermitted uses; prohibiting Defendants from interfering with the peaceful and lawful use of the Property and the lake by the public and other front-lot property owners; and awarding damages that include, *inter alia*, exemplary damages, attorney's fees and costs.

COUNT III: Trespass. Holtwood claimed Defendants committed a continuing trespass on the Property, by occupying the Property without valid permits and in violation of Holtwood's Policy. Holtwood sought an order preliminarily and permanently enjoining Defendants from trespassing on the Property, including requiring Defendants to remove unpermitted uses, and to refrain from future trespasses, including interference with the use of the Lake by other front-lot property owners and the public. Holtwood sought damages, plus attorney's fees and costs.

COUNT IV: Misappropriation. Holtwood claimed that Defendants made unauthorized and unlawful use of the Property, in violation of the Policy.

***See generally*** Complaint, 9/2/20.

Defendants filed an answer, new matter, and counterclaim on November 16, 2020. Defendants admitted, in their new matter, that they removed their violating float and boat "[a]s of early October 2020[,]" **after Holtwood filed the instant action**. Answer, New Matter and Counterclaim, 11/16/20, ¶ 100. Defendants also filed their own claim for attorney's fees. ***Id.*** ¶¶ 107-110. Holtwood replied to new matter and preliminarily objected to Defendants' counterclaim on November 17, 2020. On December 11, 2020, Defendants filed an amended counterclaim.

After several procedural matters not relevant to the instant appeal, on August 26, 2022, Holtwood filed a motion for partial summary judgment on Count III of their complaint. Defendants filed an answer and their own motion for partial summary judgment on October 7, 2022.

On June 20, 2023, the trial court granted partial summary judgment in Holtwood's favor as to Count III, opining as follows:

> [A] trespass occurs when a person who is not privileged to do so intrudes upon land in possession of another, whether willfully or by mistake. *See Briggs v. Sw. Energy Prod. Co.*, 224 A.3d 334, 346 (Pa. 2020). It is undisputed that Holtwood revoked [Defendants'] Nonstandard Shoreline Use Permit ("Permit") in July 2020[,] as a result of [Defendants'] violations of the [Policy]. Holtwood's revocation letter to [Defendants] dated July 1, 2020[,] is included as an attachment to Holtwood's Complaint filed September 2, 2020. In the letter, Holtwood advised [Defendants] that all uses currently placed on [the Property], including any water uses (*i.e.*, dock, mooring buoy, float) must be removed by July 15, 2020. Holtwood further advised that it is prepared to take legal action to enforce its Policy.
>
> At the April 2021 hearing on [Holtwood's] Motion for Preliminary Injunction, Defendants admitted, through their testimony, that they did not remove the dock until around Labor Day 2020, which was September 7, 2020. [Defendants] also admitted that their belongings were still in the [L]ake after Holtwood initiated the instant action. In other words, **[Defendants] admitted that they were continuing to willfully trespass on Holtwood's property at the time the Complaint was filed.** The record reflects that no issue of material fact as to trespass could be established by additional discovery or expert report[s]. *See* Pa.R.C.P. 1035.2(1). [Defendants] [did] not assert anything to the contrary in their Answer, as it contain[ed] only denials regarding Holtwood's trespass claim. Therefore, Holtwood is entitled to summary judgment on Count III of its [c]omplaint.

Trial Court Opinion, 6/20/23, at 2-3.

The trial court further determined that Holtwood's Policy included language authorizing an award of the attorneys' fees and costs incurred by Holtwood to enforce the Policy. *Id.* at 3. Thus, the court ruled that Holtwood is entitled to reimbursement of its attorneys' fees and costs. *Id.* at 4.

Relevant to the instant appeal, on July 6, 2023, Holtwood filed a petition for attorneys' fees and costs (Fee Petition), as permitted by its Policy. Fee Petition, 7/6/23. Defendants filed a response. On December 19, 2023, without a hearing, the trial court granted the Fee Petition, and awarded Holtwood "reasonable" attorney's fees in the amount of $18,596.75. Trial Court Order, 12/19/23. Pertinently, the fee award reimbursed the fees incurred by Holtwood only up to the date on which Defendants removed their dock. *Id.*

On January 18, 2024, Holtwood filed a notice of appeal and a praecipe for judgment. That same day, Holtwood filed a praecipe to discontinue Counts II and IV of its complaint. Defendants filed a cross-appeal on February 1, 2024. On April 4, 2024, Holtwood and Defendants filed a joint application to remand to the trial court, in order to perfect appellate jurisdiction. Consequently, on July 5, 2024, this Court quashed the appeal as interlocutory. ***BIF III Holtwood, LLC v. Sanford***, 397 EDA 2024 (Pa. Super. filed July 5, 2024) (order).

On July 30, 2024, the trial court entered an order dismissing Defendants' final counterclaim, the only outstanding matter before the trial court.

Thereafter, Holtwood timely appealed, and Defendants timely cross-appealed. Both parties filed court-ordered concise statements of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). The trial court has filed an opinion.[1]

In their appeal, Defendants present the following issues for our review:

1. WHETHER AND TO WHAT EXTENT THE TRIAL COURT, IN ISSUING ITS JUNE 20, 2023[,] ORDER GRANTING HOLTWOOD'S MOTION FOR PARTIAL SUMMARY JUDGMENT, COMMITTED ERROR OR OTHERWISE ABUSED ITS DISCRETION IN ENFORCING A UNILATERAL ATTORNEY'S FEES PROVISION CONTAINED IN A CONTRACT OF ADHESION AGAINST [DEFENDANTS,] WHERE HOLTWOOD FAILED TO INCLUDE A CLAIM FOR BREACH OF CONTRACT, LOST ITS UNDERLYING PETITION FOR PRELIMINARY INJUNCTION AND WHOSE FEE-SHIFTING PROVISION IS NOT "NEUTRAL" TO ALL PARTIES?

2. WHETHER AND TO WHAT EXTENT THE TRIAL COURT, IN ISSUING ITS DECEMBER 19, 2023[,] ORDER GRANTING HOLTWOOD'S PETITION FOR ATTORNEY'S FEES AND COSTS, COMMITTED ERROR OR OTHERWISE ABUSED ITS DISCRETION WHEN UNREASONABLY CALCULATING ATTORNEY'S FEES AND COSTS RELATED TO ENFORCING ITS POLICY TO BE $18,476.50 BY FAILING TO MAKE ANY FINDINGS AS TO REASONABLENESS OF THE FEES AND THE CALCULATED AWARD?

Designated Appellants' Brief at 5.

In its cross-appeal, Holtwood presents the following issue for our review:

Did the trial court err by arbitrarily limiting [Holtwood's] fee award to only attorneys' fees and costs incurred until [Defendants] stopped trespassing, in contravention to the plain language of the contractual fee provision entitling [Holtwood] to reimbursement of "any costs (including reasonable attorneys' fees) that it may incur

_____

[1] This Court subsequently designated Defendants as appellants, and Holtwood as appellee.

- 10 -

in enforcing the permit [*sic*] the [Policy], and these Terms and Conditions?

Designated Appellee's Brief at 4.

The principles governing our review are well settled:

[A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. [When] our inquiry involves solely questions of law, our [standard of] review is *de novo*.

With respect to the denial of summary judgment, we review the trial court's denial of summary judgment for an abuse of discretion or error of law.

*Kowall v. United States Steel Corp., Inc.*, 325 A.3d 802, 805-06 (Pa. Super. 2024) (quoting *Hildebrand v. EQT Prod. Co.*, 165 A.3d 969, 971 (Pa. Super. 2017) (citations omitted and formatting altered)).

## DEFENDANTS' APPEAL

In their first issue, Defendants challenge Section 4(c) of the Policy, which authorizes a fee award, as an unenforceable adhesion contract, because "[t]here is zero evidence that [Defendants] had any 'meaningful choice' in the inclusion of Section 4(c) in their Permit." Designated Appellants' Brief at 33. In support, Defendants assert that Holtwood enjoys the sole power to bestow and revoke licenses and permits. *Id.* Defendants further challenge the trial court's failure to hear any evidence regarding the circumstances surrounding

the Policy and Holtwood's permitting procedures.  *Id.* at 33-34.  Defendants

argue that,

> [r]eviewing the entire record through the widest possible lens, Section 4(c) of the Permit is unclear, ambiguous, and—absent additional evidence aside from Holtwood's Policy and the relevant testimony of record—unenforceable as a one-sided adhesion contract.  *See American Southern Ins. Co., Inc.*[ *v. Halbert*], 203 A.3d [223,] 228 [(Pa. Super. 2019)] (quoting *Chepkevich* [*v. Hidden Valley Resort, L.P.*], 2 A.3d [1174,] 1190 [(Pa. 2010)]).

Designated Appellants' Brief at 31.

In addition, Defendants assert that, even if the Policy's language is

considered neutral, the Policy is nevertheless ambiguous, and therefore

unenforceable.  *Id.* at 35.  Specifically, Defendants challenge the meaning of

the term "enforcement," as the Policy allows for attorneys' fees and costs

incurred as a result of Holtwood's "enforcement" of the Policy.  *Id.*

Initially, our review discloses that Defendants failed to preserve in their

Pa.R.A.P. 1925(b) concise statement any challenge to the Policy as ambiguous

and/or an adhesion contract.   In their concise statement, Defendants

preserved the following issues:

a. [T]he [trial court's] award of attorneys' fees and costs against Defendants in the amount of $18,596.75 in favor of [Holtwood] lacked any reasonable basis and was performed in a manner that grossly deviated from operative caselaw by incorrectly calculating the amount of attorneys' fees and costs and/or otherwise determining the reasonable hourly rate of any attorney practicing in Wayne County, Pennsylvania; and/or

b. [T]he [trial court] misapplied and otherwise failed to appropriately apply the applicable and operative caselaw to the facts and evidence presented … because [Holtwood] was not

- 12 -

the prevailing party in its litigation against Defendants, nor did the trial court afford [Holtwood] with any form of relief triggering attorney's fees.

Designated Appellants' Concise Statement, 9/11/24, at 2 (unpaginated).

Pennsylvania Rule of Appellate Procedure 1925(b)(4) provides that "[i]ssues not included in the Statement … are waived." Pa.R.A.P. 1925(b)(4)(vii). Because Defendants failed to identify a challenge to the Policy as an adhesion contract or ambiguous, these challenges are waived. *See id.*

Defendants next argue that the trial court abused its discretion by enforcing the Policy's provision regarding attorneys' fees. Designated Appellants' Brief at 30. Defendants assert that Holtwood's claim for fees is defeated by Holtwood's failure to allege a breach of contract, and its failure to prevail in the underlying litigation. *Id.* Defendants point out, "there existed *no violation* of Holtwood's Policy to enforce as of September 7, 2020 (five days after filing its Complaint and Motion)"; "Holtwood continued litigating the matter against [Defendants] for four additional years"; and "Holtwood was awarded *none* of the relief it requested in the form of money damages or equitable relief[.]" *Id.* (emphasis in original). Defendants point to the trial court's conclusion that Holtwood "already had the exact form of relief against [Defendants] in the form of the … Order granting it a permanent injunction." *Id.* at 31-32.

Holtwood disagrees, arguing that it was necessary to litigate the applicability of the prior permanent injunction because (a) Holtwood was not a party to the prior litigation between PPL Holtwood and Defendants; (b) Holtwood adopted a new Policy following its purchase of the Property and Project; and (c) Holtwood issued Defendants a new permit in 2017. Designated Cross-Appellee's Brief at 25-26. According to Holtwood,

> the procedural mechanism Holtwood used to enforce its Policy and Permit, and the docket number under which the action proceeded, have no bearing on its contractual right to recover its legal enforcement costs.

*Id.* at 26.

Holtwood further asserts that its action was necessary to prevent further trespasses by Defendants. *Id.* at 27. According to Holtwood,

> although [Defendants] eventually ceased trespassing, it was impossible for Holtwood to know if and/or when [Defendants] would begin trespassing again. It was therefore necessary and proper for Holtwood to continue litigating this action even though [Defendants] ceased trespassing after Holtwood served its [c]omplaint on them.

> Absent injunctive relief, Holtwood had no way of deterring [Defendants] from placing their dock and boat in the Lake during the next boating season—committing yet another trespass—which would have required Holtwood to initiate another trespass action. To enforce its Policy and Permit, Holtwood was entitled to continue to litigate this action after [Defendants] temporarily stopped trespassing, particularly given the history between [Defendants] and PPL Holtwood …, where [Defendants] ignored multiple court orders commanding them to stop trespassing.

*Id.* at 28.

To resolve this issue, we must interpret the plain language of the Policy.

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

*Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 408 (Pa. Super. 2010)

(internal quotation marks, citations, and modifications omitted).

When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

*Melton v. Melton*, 831 A.2d 646, 653-54 (Pa. Super. 2003) (quoting *Profit Wize Mktg. v. Wiest*, 812 A.2d 1270, 1274 (Pa. Super. 2002)).

As this Court has explained, the term

"prevailing party," is commonly defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." While this definition encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to those circumstances where the fact finder declares a winner and the court enters judgment in that party's favor. Such a pronouncement does not accompany a compromise or settlement.

*Profit Wize*, 812 A.2d at 1275-76 (citation omitted) (quoting *Prevailing Party*, BLACK'S LAW DICTIONARY 1145 (7th ed. 1999)); *accord Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 243 (Pa. 2024).

With this in mind, we review the language of the Policy. The Policy provides that,

> [c]onsistent with its FERC license obligations, Holtwood reserves the right to take any action necessary, either itself or through any entity or person authorized to act on its behalf, to address and remove any lake use which, in its sole discretion, is inconsistent with this Policy. Such actions include, but are not limited to: removing the privilege to use Project lands or waters, demanding restitution for any damage to its property, prosecuting under the law for violations of any statute, rule, regulation, or ordinance, or using any other remedy available to it. … Holtwood reserves the right to supervise and control the use and occupancies, for which it grants permission, and to monitor the use of, and ensure compliance with the covenants of the instrument of conveyance for, and any interests that it has conveyed or uses that it has permitted.

Policy, § I(A) (capitalization modified).

The Policy defines the types of permits necessary for certain uses of the Property, including a Standard Shoreline Use Permit (Section III) and a Nonstandard Shoreline Use Permit (Section IV). *Id.* § I(B).

The Policy objectives include the following:

> 1.   Operation of Lake Wallenpaupack and associated lands within FERC license requirements for recreation, safety and environmental protection.
>
> 2.   Regulation of commercial, recreational and other activities that may occur on Lake Wallenpaupack and associated lands; to promote public safety; to protect environmental features and values; and to permit Holtwood to carry out its responsibilities and obligations under its FERC license.
>
> 3.   Establishment of guidelines for all water and land-based uses to meet federal, state and local laws, regulations, rules or ordinances relating to public health, safety and welfare.

4.    Regulation of all uses of the [L]ake and associated lands to maximize public use and enjoyment and to minimize public safety concerns.

*Id.* § I(D).

The Policy identifies the permissible uses and prohibited uses.  *Id.* § II(B)-(C).  The Policy prohibits "[a]ny other activity that, in Holtwood's sole opinion, poses a threat to public safety and welfare, or is otherwise inconsistent with the objective to preserve the scenic, recreational and environmental value of its lands and waters."  *Id.* ¶ II (C).  Prohibited activities include

[t]he parking of motorized vehicles except as necessary for the launching and removal of boats or the drop-off and pickup of boating supplies, or as needed by people with disabilities.

Vegetation removal of any sort except in accordance with Section V [].

….

Placement of debris or other miscellaneous non-permissible uses including … any [] items that give the impression of private property.

Placement or attachment of miscellaneous items on trees, including but not limited to swings, signs, hammocks, flagpoles, *etc.*

….

Any use or activity conducted without prior written permission for that use or activity.

**Any use, activity or encroachment that in Holtwood's view interferes with the full enjoyment of its lands and the [L]ake by neighboring property owners or the general public.**

- 17 -

> Any other use that, in Holtwood's sole opinion, degrades the scene, recreational or environmental value of the [Project].

*Id.* § III(B) (bullets omitted; original emphasis omitted; emphasis added).

Significantly, the Policy further provides as follows:

> Permittee agrees to reimburse Holtwood for any costs (including reasonable attorney's fees) that it may incur in enforcing the permit, the [Policy,] and these Terms and Conditions. Permittee shall reimburse Holtwood for all damages to [Holtwood] property resulting from any violation of the permit, or the [Policy,] including these Terms and Conditions.

Policy, § IV(c).

Relevantly, Holtwood claimed that Defendants, who were permittees, violated multiple Policy sections. In particular, Policy Section III(D)(1) defines the water uses authorized by a Standard Shoreline Use Permit, as held by Defendants. Complaint, ¶¶ 50-53. In relevant part, Section III(D)(1) provides as follows:

> A dock is a floating structure connected to the shoreline by a walkway/ramp and is most often used for mooring boats. A Standard Shoreline Use Permit grants to the front-lot owner permission to install **ONE** floating dock along the shoreline, **directly fronting the font-lot property. The Dock must be positioned as close as possible to the midpoint of the property. If the dock cannot be placed near the centerline, positioning must be done so as not to impose on the water frontage of adjacent front-lot owners**….

Policy § III(D)(1) (emphasis added).

On July 11, 2022, the trial court concluded that a preliminary injunction was not necessary to prevent immediate and irreparable harm, as the prior, permanent injunction remained in effect. Trial Court Opinion, 7/11/22, at 3-

- 18 -

4. In so holding, the trial court disagreed with Defendants' argument that Holtwood had waived the injunction by issuing its 2017 permit to Defendants. *Id.* However, the trial court concluded a preliminary injunction was not necessary to preserve the status quo, "as [Holtwood] has exclusive control of granting or withholding of the shoreline permits." *Id.* at 4. Thus, while the trial court did not impose a "new" injunction against Defendants, the court, in denying Holtwood's request for a preliminary injunction, ruled in Holtwood's favor that the prior permanent injunction remained in effect. *Id.*

Further, the trial court subsequently entered summary judgment, **in Holtwood's favor**, on Count III of its Complaint: Trespass. Trial Court Order, 6/20/23. As the trial court explained,

> At the April 2021 hearing on [Holtwood's] Motion for Preliminary Injunction, Defendants admitted, through their testimony, that they did not remove the dock [(a Policy violation)] until around … September 7, 2020. [Defendants] also admitted that their belongings were still in the [L]ake after Holtwood initiated the action. In other words, [Defendants] admitted that they were continuing to willfully trespass on Holtwood's property at the time the Complaint was filed. The record reflects no issue of material fact as to trespass that could be established by additional discovery or expert report. *See* Pa.R.C[.]P. 1035.2(1). [Defendants] do not assert anything to the contrary in their Answer, as it contained only denials regarding Holtwood's trespass claim. **Therefore, Holtwood is entitled to summary judgment on Count III of its Complaint.**

Trial Court Opinion, 6/20/23, at 3 (emphasis added).

Thus, Holtwood prevailed in enjoining Defendants' continued Policy violations, as well as in its trespass action against Defendants. Pursuant to ***Profit Wize***, the fact that Holtwood received less relief than it initially sought

does not bar it from being the prevailing party. *See Profit Wize*, 812 A.2d at 1275-76. The trial court declared a winner and entered judgment in Holtwood's favor. Thus, Defendants' claim that Holtwood did not "prevail" in the underlying action lacks merit and warrants no relief.

Defendants next argue that the trial court erred in not conducting a hearing on the "reasonableness" of Holtwood's claim for attorneys' fees. Designated Appellants' Brief at 40. Upon careful review, we agree.

"[I]t is hornbook law that the reasonableness of [attorneys'] fee[s] is a matter for the sound discretion of the [trial c]ourt and will be changed by an appellate [c]ourt only when there is a clear abuse of discretion." *Estate of LaRocca*, 246 A.2d 337, 339 (Pa. 1968).

As our Supreme Court has explained,

> "[t]he general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct." *Lucchino v. Commonwealth*, … 809 A.2d 264, 267 (Pa. 2002). This so-called "American Rule" holds true "unless there is express statutory authorization, **a clear agreement of the parties**[,] or some other established exception." *Mosaica Academy Charter School v. Com. Dept. of Educ.*, … 813 A.2d 813, 822 (Pa. 2002).

*McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009) (emphasis added).

In *McMullen*, this Court discussed whether the trial court may consider the reasonableness of legal fees, even though the contract awarding such fees does not specify that fees must be reasonable. This Court held the Court may consider reasonableness when awarding attorneys' fees. *Id.* at 776-77.

In **LaRocca**, our Supreme Court established the following factors a court must use to evaluate the reasonableness of attorney fees and costs:

> [T]he amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation[;] … the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

**LaRocca**, 246 A.2d at 339 (citations and footnote omitted).

Instantly, the trial court did not consider whether Holtwood's requested attorneys' fees and costs were "reasonable." However, the trial court implicitly considered reasonableness, when it rejected Holtwood's claim for fees incurred following Defendants' removal of the dock. The trial court did not afford Defendants an opportunity to object to Holtwood's claimed fees and costs. We conclude that this was error. **See id**. We therefore reverse the trial court's award of attorneys' fees and costs. As we discuss below, we remand for further proceedings for Holtwood to submit evidence of their fees and costs incurred following the dock's removal. Should the trial court consider the reasonableness of the fees, the trial court must afford Defendants the opportunity to challenge the reasonableness of those fees and costs, and render an award based on the parties' submissions and the nature of the work required. **See LaRocca**, 246 A.2d at 339.

### Holtwood's Cross-Appeal

- 21 -

In its cross-appeal, Holtwood argues that the trial court erred in limiting its award of attorneys' fees and costs "to only those incurred until [Defendants] stopped trespassing." Designated Appellee's Brief at 20. Holtwood asserts that it was successful in enforcing its Policy because:

> (a) [Defendants] stopped trespassing once they were served with the Complaint; (b) the trial court made clear that a permanent injunction in favor of the previous owner of the Lake was still in effect and prohibited [Defendants] from using Holtwood property without Holtwood's permission; and (c) the trial court entered judgment in favor of Holtwood and against [Defendants] on Holtwood's trespass claim….

*Id.* Holtwood argues it is entitled to reasonable attorneys' fees and costs incurred in litigating its entire action, including its trespass count. *See id.* We agree.

> In its complaint, Holtwood averred Defendants'
>
> [e]gregious, outrageous, vexatious, willful, wanton, defiant and malicious disregard for Holtwood's rights, violations of the Policy, continual trespass and disregard for public safety both on and off the lake, and threatening behavior toward other front-lot owners[,] have required Holtwood to devote significant time, energy and legal resources toward [Defendants'] various Policy violations, entitling Holtwood to (a) a preliminary and permanent injunction, and (b) an order directing [Defendants] to reimburse Holtwood for its enforcement costs, attorney's fees and such other damages that are permitted by the law and the Policy.

Complaint, 9/2/20, ¶ 49.

> In Count III, Trespass, Holtwood alleged that
>
> 77. [Defendants] intentionally remain upon land and water owned by Holtwood without privilege.

78. By their actions, [Defendants] are committing a continuing trespass on lands owned by Holtwood by occupying the shoreline and like without valid permits **in violation of Holtwood's Policy**.

*Id.* ¶¶ 77-78 (emphasis added). In their prayer for relief, Holtwood sought not only an injunction, but an order compelling Defendants

to remove any unpermitted uses (including dock, mooring buoy, and/or watercraft) and to refrain from such unpermitted uses as are depicted in all the attached exhibits in the future;

….

[and Holtwood sought an] Award [of] compensatory damages to Holtwood against [Defendants] that include, but are not limited to, Holtwood's enforcement costs, attorney's fees and costs for litigation in an amount to be determined ….

*Id.*, Count III, Prayer for Relief.

As stated above, under the Policy, Defendants agreed "to reimburse Holtwood for any costs (including reasonable attorney's fees) that it may incur in enforcing" the Policy. Policy, § IV(C). Instantly, Holtwood's enforcement action did not terminate at the time Defendants removed their dock, but upon the trial court's final order in the underlying action on Holtwood's complaint. That order rendered final the trial court's entry of partial summary judgment, in Holtwood's favor, in the trespass action based on a Policy violation. Thus, Holtwood is entitled to attorneys' fees and costs incurred in securing a final order in its trespass action.

For this reason, we reverse the trial court's order. Holtwood is entitled to attorneys' fees and costs, in connection with its litigation in securing a final

order in its trespass action. We therefore reverse the trial court's award of fees and costs and remand for further proceedings.

Order reversed. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/13/2025